Curia, per

O’Neall, J.
The first ground of objection taken by the plaintiff, for the want of notice, under the Act of 1788, came too late, after he had filed his exception to the prisoner’s schedule, and he was put on his trial before a jury. For the objection was previous to the issue, in fact. The making up of the latter was a waiver of any exception, which in itself supposes that the plaintiff was not prepared to meet the investigation of the case. In this case, one jury had heard the case, and not agreeing, had been discharged, and another had been summoned, and was about being impannelled to try the case before the objection was pre. sented. Under such circumstances, it was very properly overruled.
Five objections have been taken by the plaintiff to the last trial, arising out of the Act of 1833. They will be considered pretty much together, I have no doubt that the Commissioner of Special Bail had the right to have kept the first jury together until they did agree. For there was no legal limit to their term of service, and in this point of view McLemore''s case, 2 Hill, 680, differs from this, and has no application to it. But as the Commissioner of Special Bail did discharge the jury before they agreed in a verdict, his act, although it may be illegal, cannot prejudice the'defendant. No trial has in fact been made : the plaintiff has not falsified his schedule by the verdict of a jury, and there must either be a still subsist, ing legal right to have that question tried, or the defendant is entitled to be discharged. Regarding the first attempt to try the case as a failure to do so, the defendant’s application to be discharged still remains as an ori, ginal matter to be acted on, to which the plaintiff’s objection that it is false is made, and which calls for the verdict of a jury under the Act of 1833. In this point of view, the Justice did right in calling in another jury.
*7 The Act directs the “ Judge, Justice or Commissioner of Special Bail, to place the names of twenty-four neighbouring freeholders, &c.” What is meant by neighbouring freeholders? The jury drawn for the Court of General Sessions and Common Pleas, are said to come from the vicinage, that is, from the district: and I am very much disposed to think, that is the only good and sound construction which can be given to the words “neighbouring freeholders.” If this be not so, what rule can be adopted? What constitutes a neighborhood ? The only legal meaning is that which I have suggested. In common parlance, and in common use, has it any fixed limitation as to distance ? It unquestionably has none. Sometimes, persons living within two or three miles are alone regarded as neighbors ; while in other instances, persons who live in eight or ten miles of each other, are so considered. If it is to be confined to the small circle with whom the defendant or plaintiff is in the habit of exchanging acts of kindness, it would often be -impossible to obtain twenty-four freeholders from among them. But let the meaning be what it may, the Commissioner of Special Bail has the right to select the names to be put in the box ; and unless he is guilty of fraud or corruption, I do not perceive that his act can be questioned. We think, too, that having this right of selection, that he exercised it fairly and justly, in excluding from the box the names of those who had heard the case on a former occasion, and could not agree. 'A fair and impartial trial by a jury was the object intended to be secured by the Act. This was best attained by sending the case to men who were unacquainted with the facts on which they were to pass.
In giving full effect to the Act of 1833, it is necessary that the Commissioner of Special Bail should conform, as near as may be possible, to the rules governing jury trials in the Superior Courts. Mr. Gregory had been sworn as a juror, but before any testimony was heard, the case was adjourned to another day, at which time he could not, or did not, attend. In a similar case in the Superior Courts, another juryman would have been called and sworn; this was done here, and was correct. So too in relation to Gage; the Justice acted correctly in excusing him on the objection' stated by himself, that he had made up an opinion. He ought not to have sat; and if the parties did not object to him, as an honest man he ought (as he did) to have sought his own' exclusion. Col. Beatty’s substitution for him was regular ; he had been excused from sitting on a previous day, but he still remained one of the “other freeholders originally selected,” and from them the Commissioner is authorized by the Act to complete the jury.
The plaintiff’s objection that he had not sufficient and legal notice of the time of trial, Was allowed its full force in the postponement of the' *8 case. For he Was entitled to no specific notice ; he was already in Court; and all which he could demand, was a reasonable time to prepare for trial; What was reasonable time, was for the Commissioner of Special Bail to consider of and allow. This Court cannot interfere with the exercise of his discretion.
The verdict is substantially a finding that the schedule is true; and this is as much as we can expect from an Inferior Court, in which technical regularity and precision is neither expected nor desired.
The motion is dismissed.
Johnson and Harper, JJ. concurred;